UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KARIN MOYE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-12-0502 |
| § | |
| FEDERAL HOME LOAN MORTGAGE § | |
| CORPORATION, et al., § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Pending before this Court is Defendants' Motion to Dismiss ("Motion") (Doc. No. 5). After considering the Motion, all responses thereto, and the applicable law, the Court finds that Defendants' Motion must be granted.

I.   BACKGROUND

This case arises out of Plaintiff's default on her mortgage loan, and Defendants' subsequent communications with her and ultimate foreclosure of her home. Plaintiff executed a Note in the amount of $224,900.00 to Greenpoint Mortgage Funding, Inc. ("GMFI"). (Compl., Doc. No. 1-2, ¶ 7; Note, Doc. No. 5-1.) Plaintiff concurrently executed a Deed of Trust, which granted GMFI a security interest in Plaintiff's property at 19518 Cypress Church Road in Cypress, TX. (Compl. ¶ 7; Deed of Trust, Doc. No. 6-1.) Plaintiff notes that "it was represented" to her that Defendant GMAC Mortgage, LLC ("GMAC") "had the right and obligation to act as servicer for the loan" and that "GMAC was the owner of the mortgage." (Compl. ¶ 8.)

Plaintiff defaulted on the obligations due under the Note in May 2005. (*Id.* ¶ 9; Mot. at 2.) She alleges that she submitted paperwork for a loan modification multiple times at the request of GMAC. (*Id.* ¶ 10.) On June 7, 2011, Plaintiff received two letters from GMAC.[1] The first, dated June 1, 2011, acknowledged receipt of the paperwork, and stated that GMAC was processing the modification request and would notify Plaintiff within 30 days of the outcome. (*Id.*) It also stated that GMAC would not refer Plaintiff's account to foreclosure or conduct a foreclosure sale while Plaintiff's paperwork was being reviewed for the Home Affordable Modification Program. (*Id.* ¶ 11.) The second letter was dated June 2, 2011, and stated that the loan modification had been denied due to foreclosure sale being held. (*Id.* ¶ 10.) On the same day that Plaintiff states that she received these letters, June 7, GMAC instituted a substitute trustee's sale to Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac"). (*Id.* ¶ 12.)

Plaintiff states that, in reliance on GMAC's representations, Plaintiff understood that the June 7 foreclosure would not occur, and therefore did not retain a bankruptcy attorney to file a Chapter 13 bankruptcy prior to foreclosure. (*Id.* ¶ 14.) She believes that Defendants intentionally misrepresented their intentions to Plaintiff to prevent Plaintiff from seeking relief through bankruptcy before foreclosure. (*Id.* ¶ 15.) She also states that Defendants have never provided proof that GMAC had the right to initiate a foreclosure or an accounting of funds received from the foreclosure sale. (*Id.* ¶ 16.)

Plaintiff filed the instant action in state court on January 13, 2012, asserting claims of (1) fraud, (2) wrongful foreclosure due to fraud, (3) slander of title, (4) promissory estoppel, and (5) unreasonable collection. She seeks monetary damages, attorneys' fees, an accounting of funds

---

[1] Plaintiff did not attach a copy of these letters to the Complaint. Therefore, the Court evaluates the contents of these letters based on the paraphrasing contained in Plaintiff's Complaint at paragraphs 10 and 11.

received prior to and at the foreclosure sale, an order requiring Defendants to produce documentation of their ownership of the note, and an order prohibiting Defendants from interference with Plaintiff's possession of the property. Defendants assert that Plaintiff has failed to state a claim under any of these theories, and move to dismiss the complaint in its entirety.

## II.     LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth.

3

*Iqbal*, 129 S. Ct. at 1950 (citation omitted).  The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'"  *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)).  A district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).  Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted."  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted); *Duke Energy Intern., L.L.C. v. Napoli*, 748 F. Supp. 2d 656 (S.D. Tex. 2010).  The Court should generally "afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

      The Federal Rules also require a party alleging fraud to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  "What constitutes 'particularity' will necessarily differ with the facts of each case," but "[a]t a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."

4

*Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (internal quotations and citations omitted).

### III. ANALYSIS

#### A. Fraud

Under Texas law, the elements of fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter,* 607 F.3d 1029, 1032–33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

Plaintiff's claim of fraud is premised on the June 1 letter sent to Plaintiff by Defendant GMAC, which, in Plaintiff's words, stated that "Defendant GMAC would not refer Plaintiff's account to foreclosure or conduct a foreclosure sale if already referred while it is being reviewed for the Home Affordable Modification Program." (Compl. ¶ 11.) The June 2 letter, however, stated that "the request for loan modification had been denied due to foreclosure sale being held." (Compl. ¶ 10.)² Because the modification had been denied on June 2, the foreclosure sale which occurred on June 7 was not a breach of any alleged promise in the June 1 letter.

---

² Although these two statements may seem contradictory at first glance and without additional information about the denial, both parties also explained at the hearing that the June 1 letter also contained a provision stating that any requests received within seven days of a scheduled foreclosure would be denied. However, this is not contained in the Complaint, and neither party entered a copy of the letters into the record, so the Court does not consider it here. Even without this information, the June 2 letter is not a breach of the "promise" contained in the June 1 letter, as Defendant GMAC only promised not to conduct a foreclosure sale while the modification request was being reviewed. The June 2 letter clearly stated, even in the paraphrased language contained in Plaintiff's complaint, that the modification request was denied, and thus that Defendant GMAC would proceed with the foreclosure.

Moreover, Plaintiff states that she acted in reliance on Defendant GMAC's "representations"[3] by making the "decision not to retain a bankruptcy attorney to file a chapter 13 bankruptcy prior to foreclosure. Had Plaintiff known that Defendant's representations were false and misleading, Plaintiff would have filed for bankruptcy protection prior to the foreclosure date." (Compl. ¶ 14.) However, Plaintiff also states that she received the June 1 letter on the same day as she received the June 2 letter, which also was the same day that the foreclosure took place. (*Id.* ¶¶ 10, 12.) Plaintiff could not have reasonably relied on the June 1 letter and believed that it would delay her foreclosure in light of the June 2 letter and the foreclosure sale taking place on the same day.

Plaintiff responds that "the doctrines of collateral estoppel and unclean hands would prohibit Defendant from creating a wrongful, confusing scenarios [sic] of contradictory statements both oral and written (as evidenced by the two letters received on June 7th)." Neither of these doctrines assists Plaintiff in stating a claim for fraud. Plaintiff has not alleged that there was a previous lawsuit, and thus the doctrine of collateral estoppel does not apply. Additionally, the doctrine of unclean hands is an affirmative defense that applies to a party seeking equitable remedies. *See Bagby Elevator Co., Inc. v. Schindler Elevator Corp.*, 609 F.3d 768, 774 (5th Cir. 2010) ("Texas Courts have long held that the affirmative defense of unclean hands is available only in equity."). It does not apply to hold another party liable for fraud or to refute against Defendants' legal arguments.

As paraphrased by Plaintiff in the Complaint, the plain language of the two letters does not indicate fraud and forecloses reasonable reliance, and thus the Court must dismiss this claim.

---

[3] The only representations contained in the Complaint are the June 1 and June 2 letters.

### B. Wrongful Foreclosure

To sustain a wrongful foreclosure claim, a claimant must show: (1) a defect in the foreclosure sale proceedings, (2) a grossly inadequate selling price, and (3) a causal connection between the defect and the grossly inadequate price. *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.) (citing *Charter Nat'l Bank–Houston v. Stevens,* 781 S.W.2d 368, 371 (Tex. App.—Houston [14th Dist.] 1989, writ denied)). There is no allegation of a defect on the foreclosure sale proceedings or evidence of a grossly inadequate selling price. Plaintiff has not suggested that she can overcome this defect, and Defendants represented at the hearing that the property was sold for a price higher than the appraised value. Accordingly, this claim must be dismissed.

### C. Slander of Title

An action for slander of title requires: (1) the uttering and publishing of disparaging words, (2) falsity, (3) malice, (4) special damages, (5) possession of an estate or interest in the property disparaged, and (6) the loss of a specific sale. *Kiggundu v. Mortgage Electronic Registration Systems, Inc.*, Civil Action No. 4:11-1068, 2011 WL 2606359, at *7 (S.D. Tex. June 30, 2011) (citing *Duncan Land & Exploration, Inc. v. Littlepage,* 984 S.W.2d 318, 332 (Tex. App.—Ft. Worth 1998, pet. denied)). Plaintiff does not allege the publishing of disparaging words, falsity, malice, special damages, or loss of a specific sale. Again, Plaintiff's only response is that the foreclosure was wrongful because of the June 1 statement, and that this wrongful foreclosure "led to a Slander of Title." (Resp. at 4.) This is insufficient, and the claim must be dismissed.

### D. Promissory Estoppel

To state a claim for promissory estoppel, Plaintiff must plead facts showing (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by Plaintiff to her detriment. *English v. Fischer,* 660 S.W.2d 521, 524 (Tex. 1983); *Henry Schein, Inc. v. Stromboe,* 102 S.W.3d 675, 686 n.25 (Tex. 2002). A party also must "be able to establish that the defendant promised to sign an agreement satisfying the statute of frauds." *Cavil v. Trendmaker Homes, Inc.*, Civil Action No. G-10-304, 2012 WL 170751, at *7 (S.D. Tex. Jan 19, 2012) (citing *"Moore" Burger, Inc. v. Phillips Pet. Co.,* 492 S.W.2d 934, 937 (Tex. 1972)); *see also 1001 McKinney Ltd. v. Credit Suisse First Boston Mortgage Capital*, 192 S.W.3d 20, 29 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

Although the Complaint contends that "Defendant . . . entered into an oral contract for application and participation in the Making Homes Affordable program with Plaintiff, then breached the agreement" (Compl., "Count 4 – Promissory Estoppel"), there are no oral promises or contracts described in the fact section of the complaint. Rather, the only alleged promises are contained in the June 1 letter. Thus, the Court does not consider any oral promises that may have been made.

There is no allegation in the Complaint that Defendant GMAC ever agreed to sign a contract that would satisfy the statute of frauds. Moreover, as described above in connection with the fraud claim, there is no indication that Plaintiff relied to her detriment on the June 1 letter. This claim must be dismissed.

### E. Unreasonable Collection Efforts

Texas law does not define a claim for unreasonable collection efforts in precise terms. However, a valid claim must at least allege "efforts that amount to a course of harassment that

8

was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Sanghera v. Wells Fargo Bank, N.A.*, 3:10-CV-2414-B, 2012 WL 555155, at *6 (N.D. Tex. Feb. 21, 2012) (quoting *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.). This definition requires malicious intent, rather than mere negligence. *Bray v. Cadle Co.,* Civil Action No. 4:09–cv–663, 2010 WL 4053794, at *19 (S.D. Tex. 2010) (citing *EMC Mortgage,* 252 S.W.3d at 868; *B.F. Jackson, Inc. v. CoStar Realty Information, Inc.*, Civil Action No. H-08-3244, 2009 WL 1812922, at *5 (S.D. Tex. May 20, 2009)).

There are no facts in the Complaint alleging a "course of harassment" or a malicious intent to harass. Plaintiff discusses only two letters sent from Defendants. In response, Plaintiff states that "[t]o renege on an express promise is willful, wanton, malicious and intended to inflict mental anguish on Plaintiff." (Resp. at 7.) However, the Court has held above that Defendants did not violate an express promise. Even if they did, caselaw does not support a notion that the action of making or breaking an express promise is itself willful, wanton, and malicious. *See Sanghera*, 2012 WL 55515, at *7 ("The Court is unaware of—and Plaintiffs have provided no authority—as to how promising not to foreclose on a property, can, without more, be considered willful, wanton, or malicious harassment."). There is also no indication that Defendants intended to inflict bodily harm by sending letters to the Plaintiff.

In *Sanghera*, the court dismissed the plaintiffs' unreasonable collection claim, which was based on representations concerning a loan modification. Plaintiff attempts to distinguish this case based on the fact that the lender in *Sanghera* agreed to a trial period for a loan modification, during which time plaintiffs were expected to make payments and provide documentation to verify their eligibility. *See Sanghera*, 2012 WL 55515, at *1. Although Defendants in the instant case never agreed to a trial period, Plaintiff fails to explain how this is relevant, and how

9

this fact makes Defendants' actions willful or more malicious than those in *Sanghera*. This claim must be dismissed.

### F. Remedies

#### a. Accounting

Although labeled as a separate claim in the Complaint, both parties appear to agree that accounting is a remedy. (Mot. at 12; Resp. at 8–9.) *See also Triple Tee Golf Inc. v. Nike, Inc.*, 618 F. Supp. 2d 586, 599 n.15 (N.D. Tex. 2009) ("Plaintiff's . . . accounting claim has no status independent of plaintiff[']s other claims"). As the Court has determined all liability issues with this Order, it must also dismiss Plaintiff's request for an accounting.

#### b. Injunctive Relief for Production of Documents

Plaintiff asserts that she is entitled to production of the original note and deed of trust. However, as Defendants point out, many courts have found that there is nothing in Texas law that would require the original note in order to foreclose. *See Powell v. BAC Home Loans Servicing, LP*, 2011 WL 5837250, at *6 (E.D. Tex. Nov. 21, 2011) (listing cases). Plaintiff responds that "Defendant may be correct in this assertion; however, the greater interest of procedural fairness for both sides in judicial proceedings is consistent with fundamental law and should be given deference." (Resp. at 9.) Although Plaintiff cites various provisions of the Texas and U.S. Constitutions, she gives no indication of how these provisions require the Court to disregard Texas law that speaks directly on this subject. If Plaintiff believed that Defendants were not entitled to foreclose on her property, she could have expressed that through the claims in her Complaint. She is not entitled to production of the original note and deed of trust, and this claim must be dismissed.

### G. Amendment

At the hearing on this Motion, Plaintiff gave no indication that she could overcome the deficiencies identified in this Order. Rather, all of her claims are based on the two letters described in this Order, and the representations therein are not sufficient to satisfy the elements of Plaintiff's asserted claims for the reasons noted above. To the extent Plaintiff believes she can add additional allegations to overcome these defects, she can move for leave to amend within 20 days, clearly stating the amendments desired and how they satisfy the deficiencies identified in this Order. The Court will enter a final judgment order at that time if no action is taken by Plaintiff or if the Court denies leave to amend.

## IV. CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss is **GRANTED**, and Plaintiff's claims are dismissed.

**IT IS SO ORDERED**.

**SIGNED** in Houston, Texas, on this the 25th day of July, 2012.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE